## BECKER *v.* HAYNES.

*(Circuit Court, D. Massachusetts. January 14, 1887.)*

1. INNKEEPERS—LIABILITY—GOODS FOR SALE—SPECIAL DEPOSIT FOR SAFE-KEEPING—PUB. ST. MASS. CH. 102, § 12.

   Under Pub. St. Mass. *c.* 102, § 12, where there is no evidence tending to show that the loss resulted from the willful default or neglect of the innkeeper or his servants, the innkeeper is not liable for the loss of a trunk belonging to a commercial traveler, and containing goods for sale, unless there was the special agreement or deposit for safe-keeping contemplated by the statute.

2. WITNESS—IMPEACHMENT—FAILURE TO MAKE CONSISTENT STATEMENT.

   The admissibility of testimony, for the purpose of impeaching a witness, by showing his failure to make statements consistent with his testimony, is in the discretion of the trial judge, subject to the power of the court to grant a new trial, if it should appear on a review of the testimony that there was no ground for the inference that the witness whose credibility was in issue would have made the statements in question to the impeaching witnesses, if they had been true.

At Law.

*Ball, Storey & Tower,* for plaintiff.

*Prentiss Cummings,* for defendant.

CARPENTER, J. This is the plaintiff's motion for a new trial of an action at law brought against the defendant, who is an innkeeper, to recover damages for the loss of a package of merchandise. The statutes of Massachusetts exempt innholders from liability for the loss of goods, which are not personal baggage and effects, unless such goods shall be delivered by the traveler to the innholder for sake-keeping. Pub. St. *c.* 102, § 12. The testimony showed, without contradiction, that one Weilli, the servant of the plaintiff, came to Boston by rail, having in his possession a trunk full of valuable goods of the plaintiff for sale; that he delivered the trunk to the agent of an express company to be transported to the defendant's inn, taking therefor a paper, check, or receipt; that he proceeded to the defendant's inn, and registered his name, and was assigned to a room, and delivered to the clerk the paper, check, or receipt, with the statement that it was a check for his trunk which would shortly arrive; that the agent of the express company brought the trunk to the inn, and deposited it with others on the sidewalk in front of the inn, having first summoned the porter by ringing a bell; that this method of delivering the trunk at the inn was the method which was usually practiced in such cases, as was well known to the defendant; and that the trunk was never brought into the inn, but was stolen from the sidewalk. Weilli testified that when he delivered the check to the clerk he told him that it was the check for a trunk containing valuable goods, and put the trunk under his care for safe-keeping, and that the clerk accepted the trust. The clerk denied that the trunk was so intrusted to him. The jury found a verdict for the defendant.

The first ground of the motion is that the presiding judge instructed the jury that the plaintiff must prove a special agreement for the safe-

keeping of the trunk, whereas the jury should have been instructed that, if the trunk was lost by the carelessness or negligence of the defendant, the plaintiff is entitled to recover.    In answer to this, it is sufficient to say that the trunk came into the custody of the defendant only in his capacity as an innkeeper, and therefore with no other liability except such as attached to him in that capacity.    He was not liable for the loss, however incurred, unless there was the special agreement or deposit contemplated by the statute.    There was no evidence tending to show that the loss resulted from the willful default or neglect of the defendant or of his servants.

The second ground of the motion is that "the court misdirected the jury in matter of law, in that the court should have instructed the jury that, if they should find that the trunk was delivered at the hotel, and the plaintiff's agent, Weilli, had no opportunity after the arrival of the trunk to deliver it to the hotel people for safe-keeping, the plaintiff is entitled to recover.    But the court, though thereto requested by the plaintiff, declined so to rule."    There is, doubtless, good authority for holding that in a case like this the innkeeper is holden under his general liability until a reasonable time has elapsed within which the traveler may deliver the goods for safe-keeping.    But the plaintiff is not entitled to the benefit of this rule.    The jury were instructed that, on the undisputed evidence in the case, the trunk was delivered to the defendant. The only question left to them was whether or not it was delivered under a special deposit for safe-keeping.    There was, as has been stated, a dispute between the witnesses as to whether such special deposit has been made; but there was no doubt that there was ample time and opportunity in which such a deposit might have been made.    The jury were instructed that the plaintiff was entitled to the verdict if they believed that Weilli, when he delivered the check to the clerk, stated to him, as he testified he did, that it was a check for a valuable package, which he desired to be held in safe-keeping, and that the clerk accepted the trust.

The third ground of the motion is that "the court should have ruled that, upon the undisputed testimony in the case, the trunk was delivered to the hotel."    This statement is, perhaps, grounded on a misapprehension of the charge.    The jury were instructed on this point precisely as desired by the plaintiff.    The credibility of the witnesses, indeed, was left to the jury; but they were told that, if they believed the uncontradicted witnesses, they should find that the trunk was delivered to the defendant.    I think this instruction is as favorable as the plaintiff could rightly ask.

The fourth ground of the motion is stated in the motion as follows:

*Fourth.* That the court admitted incompetent testimony in behalf of the defendant therein, in that Weilli, a witness in the plaintiff's behalf, having testified that, on the night of his arrival at the defendant's hotel, he had a conversation with McKeen, the defendant's clerk, in substance as follows: "I told him that I (Weilli) was in the hair business; that I would like a stock room.    McKeen replied that several hair men stopped there,—Mr. Kimball and Mr. Weiss,—and suggested that I take a reception room in front of the office, stating that the goods would be perfectly safe in there; that he would

assign me a room on the first floor, temporarily, as I decided that I would not let him know until morning. McKeen said that they had other sample-rooms; but that the trunk was very safe in there. I had some conversation with him as to who were the best dealers. I said that I had a valuable stock, and that I wanted it to be perfectly safe; that it might be sent to my room or kept in the office. He said he would take care of it. I don't think I stated any special amount. I stated that they were very valuable goods. He said he knew that, because both Kimball and Weiss stopped there. He said that they were perfectly safe in that room. There was conversation that the trunk was to be sent to my room or to the office. It depended on how soon it got there. If brought before a short time, I should like to have it sent to my room; if not, he would take care of it during the night." That, Weilli having so testified, the court, against the plaintiff's objection, permitted the defendant to show, by certain witnesses called in the defendant's behalf, namely, Webber and McKeen and McCausland and Frank, the two latter being police officers in the employ of the city of Boston, that, while they were endeavoring to find the contents of the trunk, and to discover the persons supposed to have stolen it, they had conversations with Weilli in relation to the loss of the trunk, and that Weilli did not mention to them the conversation with the clerk above set forth to which Weilli had testified; but they were unable to recall what those conversations between themselves, respectively, and Weilli were.

The contention of the plaintiff is that, although it is competent to contradict a witness by proving statements made by him inconsistent with his statements on the stand, yet it is not admissible to prove his failure to make consistent statements, unless it appears that the circumstances were such that the witness, if his testimony were true, would naturally have stated the facts. *Perry* v. *Breed*, 117 Mass. 155. I take the doctrine of that case to be that the admission of evidence such as that here stated is in the discretion of the trial judge, subject to the power of the court on motion to grant a new trial, if it should appear, on a review of the testimony, that there was no ground for the inference that the witness would have made the statement in question, if it had been true. It seemed to me when I tried the case that there was good ground in the testimony for such an inference. I have now carefully reconsidered the whole case, referring to such parts of the testimony as are reported to me by the plaintiff, and also to my own notes and recollection, and I see no reason to change my opinion.

The fifth ground of the motion is that the verdict is against the evidence and the weight of evidence. The whole testimony, as already intimated, is not reported to me; but there can be no doubt, I think, that the only question on which the jury could have hesitated was the question of veracity between Weilli and McKeen. On this question it seems to me there was, to say the least of it, no preponderance of evidence for the plaintiff.

The motion must therefore be denied.